# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DWAINE COLEMAN, # B-62923, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-767-NJR |
| ) | |
| SGT. LINDENBERG, ) | |
| C/O WASSON, ) | |
| C/O CORNSTOBBLE, ) | |
| SGT. TAYLOR, ) | |
| UNKNOWN PARTY #2 (Intel Officer), ) | |
| and AFSCME, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This action contains eight claims that were severed from Plaintiff's original lawsuit filed in this Court on May 16, 2017, now pending as *Coleman v. Lashbrook, et. al.*, Case No. 17-cv-518-DRH-SCW. (Doc. 1). Plaintiff's claims arose from his incarceration at Menard Correctional Center, where he was confined when he brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Among other claims, Plaintiff alleges that Defendants violated his constitutional rights by sexually harassing him, retaliating against him when he complained about that treatment, and depriving him of due process.

In the Court's initial case management order (Doc. 1), Counts 1-8 of the Complaint were severed into the instant case pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). Four other claims against different Defendants remained in the original action.

Counts 1-8 are now before the Court for the mandatory merits review under 28 U.S.C. § 1915A. Section 1915A requires the Court to screen prisoner complaints to filter out non-

1

meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). As explained below, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## **The Complaint**

The portions of the Complaint (Doc. 2) that relate to Counts 1-8 are as follows:

Plaintiff arrived at Menard on March 1, 2017, and was placed in cell 814 on North Two Segregation. On March 17, 2017, Sgt. Lindenberg "threatened and sexually harassed" Plaintiff. (Doc. 2, p. 6). Plaintiff made a PREA (Prison Rape Elimination Act) complaint against Lindenberg. On March 18, 2017, Lindenberg retaliated against Plaintiff by "taking [his] outside recreation." *Id.*

On March 30, 2017, Officers Wasson and Cornstobble told other inmates that Plaintiff "was a homosexual snitch for making a PREA report on Sgt. Lindenberg." *Id.* Wasson and Cornstobble also walked past Plaintiff's cell saying "PREA I suck dick" in an antagonistic manner. *Id*. Plaintiff requested a crisis team. Sgt. Taylor retaliated against Plaintiff for this request by stripping Plaintiff of all his property, without Plaintiff being found guilty of any rule violation or receiving a shakedown or inventory slip listing the items confiscated.

Plaintiff was moved to cell 417, where Taylor, Cornstobble, and Wasson had "rigged" his sink "so water would explode and soak [Plaintiff's] cell." (Doc. 2, p. 6). Plaintiff was injured when, while attempting to avoid the "exploding" water, he fell and hurt his head, neck, and back. *Id.* He was given no medical attention, and was in the cell "wet and in pain" for two days.

The Unknown Party #2 Intel Officer "insinuated retaliation for [the] PREA report and

ridiculed [Plaintiff] and closed both investigations ["first time" and water incident] without talking to any of [Plaintiff's] listed witnesses." (Doc. 2, p. 6).

AFSCME has created a policy that emboldens bad acts against inmates on the part of its members. This is evidenced by AFSCME members who "routinely brag" that they can kill inmates without repercussions. Plaintiff quotes Cornstobble as claiming that he could "kill one of you scumbags and the union will protect me and even get me paid leave for my emotional distress for murdering you." (Doc. 2, p. 7).

Plaintiff seeks declaratory and monetary relief. (Doc. 2, p. 9).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court's initial order (Doc. 1) divided the *pro se* action into a number of claims. Of these, Counts 1-8 are included in this lawsuit. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order (or in the Order at Doc. 1) should be considered dismissed without prejudice.

**Count 1:** Lindenberg subjected Plaintiff to cruel and unusual punishment by threatening and sexually harassing him in violation of the Eight Amendment;

**Count 2:** Lindenberg retaliated against Plaintiff for making a PREA report in violation of the First Amendment by taking his outside recreation on March 18, 2017;

**Count 3:** Wasson and Cornstobble retaliated against Plaintiff for making a PREA report in violation of the First Amendment by telling other inmates Plaintiff was a homosexual and antagonizing him outside of his cell on March 30, 2017;

**Count 4:** Taylor retaliated against Plaintiff for requesting a crisis team in

3

| | |
|---|---|
| | violation of the First Amendment by stripping him of his property without his being found guilty of any rule violations; |
| **Count 5:** | Taylor violated Plaintiff's Fourteenth Amendment right to due process by stripping him of his property without his being found guilty of any rule violations and without providing him with a shakedown or inventory slip for confiscated property; |
| **Count 6:** | Taylor, Cornstobble, and Wasson subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment by tampering with his sink causing water to erupt from it, which resulted in Plaintiff sustaining injuries; |
| **Count 7:** | Intel Officer (Unknown Party # 2) violated Plaintiff's Fourteenth Amendment right to due process and retaliated against Plaintiff for filing a PREA report in violation of the First Amendment by closing investigations against Plaintiff without talking to Plaintiff's listed witnesses; |
| **Count 8:** | AFSCME has created an unconstitutional policy emboldening bad acts on the part of its members, as evidenced by members, including Cornstobble, bragging that they can kill inmates without repercussions. |

Counts 2, 3, 4, 6, and the retaliation portion of Count 7 shall proceed for further review in this action. Counts 1, 5, 8, and the due process portion of Count 7 shall be dismissed pursuant to § 1915A.

## Dismissal of Count 1 – Cruel and Unusual Punishment

Plaintiff claims that Lindenberg "threatened and sexually harassed" him on March 17, 2017. (Doc. 2, p. 6). This is Plaintiff's complete account of this claim; he adds no factual description of what statements or actions Lindenberg directed at him. As an Eighth Amendment claim, this meager recitation fails.

In order to state a civil rights claim upon which relief may be granted, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual content must be sufficient to "allow[] the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is obligated to accept factual allegations as true. *See Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011). However, some factual allegations may be so sketchy that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.

Here, Plaintiff's statement that Lindenberg threatened and harassed him is purely conclusory and devoid of factual statements that would enable the Court to assess whether Lindenberg's actions violated the Eighth Amendment. For this reason, **Count 1** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Count 2 – Retaliation – Lindenberg

Plaintiff's statement in support of this claim is brief as well, but it contains enough facts to warrant further consideration. Following the harassment mentioned in Count 1, Plaintiff filed a complaint against Lindenberg in the form of a PREA report. The next day, March 18, 2017, Lindenberg took away Plaintiff's outside recreation.

"A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). In this case, Plaintiff alleges that Lindenberg took an adverse action against him by revoking a privilege, shortly after Plaintiff filed the PREA report. The filing of a complaint, grievance, or lawsuit by a prisoner is activity protected under the First Amendment. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). The chronology in the Complaint arguably presents a colorable claim of retaliation; therefore, the claim survives review under § 1915A. *See Zimmerman*, 226 F.3d at 574

(reversing district court's § 1915A dismissal because inmate's allegations established that "the exercise of his [First Amendment] right was closely followed by the retaliatory act").

Accordingly, the retaliation claim in **Count 2** against Lindenberg shall proceed for further consideration.

### Count 3 – Retaliation – Wasson & Cornstobble

Plaintiff claims that the PREA report he filed against Lindenberg triggered further retaliation. On March 30, 2017, Officers Wasson and Cornstobble told other inmates that Plaintiff "was a homosexual snitch" for making the report against Lindenberg, and remarked "PREA I suck dick" when they walked past Plaintiff's cell. (Doc. 2, p. 6).

At this stage, these verbal comments may be considered "adverse actions" for purposes of a retaliation claim. A prisoner who is labeled as a "snitch" could become a target for violence at the hands of other inmates. The references to Plaintiff being homosexual (whether true or false) may also place him at risk. Wasson's and Cornstobble's alleged reference to Plaintiff's PREA report sufficiently suggests that their actions were meant to retaliate for Plaintiff's protected activity. The retaliation claim against Wasson and Cornstobble may therefore proceed under **Count 3**.

### Count 4 – Retaliation – Taylor

For this claim, Plaintiff alleges that he requested a crisis team. He does not say why, but the narrative implies that he made this request on the heels of the "homosexual snitch" and "PREA I suck dick" comments made by Wasson and Cornstobble within earshot of other prisoners. (Doc. 2, p. 6). After Plaintiff's crisis team request, Taylor "stripped" Plaintiff of "all his property." Plaintiff states he had not been found guilty of any rule violation. Taylor failed to give Plaintiff any documentation of the confiscated items.

At issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

If Plaintiff can eventually present proof to demonstrate that Taylor's confiscation of his property was motivated by Plaintiff's protected activity of requesting the intervention/assistance of a crisis team, then he may prevail on this retaliation claim. Further factual development will be required in order to evaluate this claim. Accordingly, **Count 4** shall proceed for further review.

### Dismissal of Count 5 – Due Process

This due process claim against Taylor is based on the same facts that gave rise to the retaliation claim in Count 4. As a due process claim, however, Taylor's confiscation of Plaintiff's property without a disciplinary finding of guilt and without any record of the property taken, does not amount to a civil rights violation.

The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from a deprivation of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*. If the state provides an adequate remedy, Plaintiff cannot maintain a federal civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v.*

7

*McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). The existence of this state process means that Plaintiff may not pursue a Fourteenth Amendment due process claim in this action. This is the case whether or not Plaintiff actually brings a case in the Illinois Court of Claims.

Accordingly, Plaintiff's civil rights claim in **Count 5** shall be dismissed from this action with prejudice. The dismissal of this claim, however, shall not preclude Plaintiff from bringing his property claim in the Illinois Court of Claims if he is able to do so under the applicable rules.

### Count 6 – Cruel & Unusual Punishment

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause with regards to any conditions of confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. It

is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

An action such as knowingly housing an inmate in a cell that poses a health risk due to unsanitary or unsafe conditions, may give rise to an Eighth Amendment claim. Similarly, a guard's use of excessive force against an inmate when such force is inflicted "maliciously and sadistically" rather than in the context of "a good-faith effort to maintain or restore discipline" may violate the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Plaintiff's claim under Count 6 has elements of both these examples.

Plaintiff's allegation that Taylor, Cornstobble, and Wasson intentionally tampered with the sink in his cell (# 417) so that water would "explode" from it and soak the cell arguably satisfies both the objective and subjective components of an Eighth Amendment claim. The action of rigging the sink to spray water throughout the cell created a safety hazard. The risk of physical harm posed by the sink in its altered condition may satisfy the objective element of the claim. These Defendants may or may not have anticipated that Plaintiff could be injured by falling when he moved to avoid the exploding water. However, the alleged purposeful tampering demonstrates their deliberate indifference to the risk of harm to Plaintiff.

At this early stage, the cruel and unusual punishment claim in **Count 6** may proceed against Taylor, Cornstobble, and Wasson.

## Count 7 – Due Process & Retaliation

This claim is against the "Intel Officer" designated as Unknown Party #2. Plaintiff's brief statement against this individual is that he "insinuated retaliation for [Plaintiff's] PREA report," and closed "both" investigations of complaints brought by Plaintiff without talking to any of

Plaintiff's witnesses. (Doc. 1, p. 6). It appears from the Complaint that the "first" investigation was regarding Plaintiff's PREA report, and the other investigation was over the "water incident" that resulted from the tampering described in Count 6. *Id.*

This claim has 2 components – first, a due process claim for the Unknown Party's failure to investigate Plaintiff's complaints against prison officials. Secondly, Plaintiff's language suggests a retaliation claim for the Unknown Party's decision to close the investigations without completing them.

Plaintiff cannot maintain a due process claim based on the facts presented. Prisoners do not have a constitutional right to have their grievances or complaints investigated through the prison procedures for handling such matters. Prison grievance procedures or internal investigatory procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance/investigatory procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). As such, the alleged mishandling of a complaint "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). This due process portion of the claim against the Intel Officer/Unknown Party #2 shall therefore be dismissed.

Retaliation claims are evaluated under a different standard, as discussed above under Counts 2, 3, and 4. To state a claim for retaliation, Plaintiff must have engaged in an activity protected by the First Amendment (such as filing the PREA report), and then have suffered some

adverse action that would likely deter such protected activity in the future. Further, the First Amendment activity must have been "at least a motivating factor" in the Defendant's decision to take the retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).

Plaintiff's statement that the Intel Officer "insinuated retaliation for [Plaintiff's] PREA report" is ambiguous. Plaintiff may be saying that this Defendant retaliated against him for filing the PREA report, by failing to investigate that same report, and also by closing the "water incident" investigation without looking into Plaintiff's complaint. If so, then the question is whether closing the investigations can be considered an "adverse action" that will sustain a retaliation claim. The failure to have one's complaints investigated does not rise to the level of adversity found in the other retaliation claims herein, and even if the investigation had been completed, there is no guarantee that Plaintiff would have obtained any redress. Thus, the Intel Officer's inaction may not rise to the level of a retaliatory "adverse action." Nonetheless, the Court is reluctant to dismiss the claim at this early stage. In any event, before a claim can proceed against the Unknown Party #2 Intel Officer, Plaintiff must identify him by name. At this time, the retaliation portion of **Count 7** survives review under § 1915A.

## Dismissal of Count 8 – AFSCME

A plaintiff cannot proceed with a federal claim under § 1983 against a non-state actor. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Gayman v. Principal Fin. Servs., Inc.*, 311 F.3d 851, 852-53 (7th Cir. 2003). AFSCME, the American Federation of State, County, and Municipal Employees, is a union that represents public employees in collective bargaining regarding their pay, benefits, and working conditions. *See* AFSCME website, http://www.afscme.org/union/about (last visited Sept. 16, 2017). AFSCME as an organization is not a governmental entity, but is a labor association. Unlike the individual correctional officers

who may be members of the union, AFSCME itself is not a "state actor" that can be sued in a civil rights action. Therefore, Plaintiff's claims in **Count 8** against AFSCME as a Defendant shall be dismissed with prejudice, and AFSCME shall be dismissed from the action.

### Identification of Unknown Defendant

Plaintiff shall be allowed to proceed with the retaliation portion of Count 7 against Defendant Unknown Party #2 (Intel Officer). However, this Defendant must be identified with particularity before service of the Complaint can be made on him. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of Defendant Unknown Party #2 (Intel Officer) is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

### Disposition

**COUNT 1** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**COUNTS 5 and 8** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. The due process portion of **COUNT 7** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted; only the retaliation portion of Count 7 shall proceed.

Defendant **AFSCME** is **DISMISSED** with prejudice.

The Clerk of Court shall prepare for **LINDENBERG, WASSON, CORNSTOBBLE,** and **TAYLOR**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, a copy of the Memorandum and Order at Doc. 1, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown Party Defendant #2 (Intel Officer) until such time as Plaintiff has identified this individual by name in a properly filed motion for substitution of party. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and service address for this person.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 19, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**